1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

GETTY IMAGES, INC.; and GETTY
IMAGES (US), INC.,

                Petitioners,

      v.

CAR CULTURE, INC., a Florida corporation;
AUTOMOBILIA II, LLC, a Florida limited
liability company,

                Respondents.

No.

**DECLARATION OF HELEN
GUDGEON IN SUPPORT OF
PETITION TO COMPEL
ARBITRATION**

     I, Helen Gudgeon, declare as follows:

     1.     I am a Director of Content Partner and Business Development at Getty

Images (Seattle), Inc., a position I have held since September 2016.  Getty Images

(Seattle), Inc. provides support services to Getty Images, Inc. and Getty Images (US),

Inc. (collectively, "Getty Images").  I make this Declaration based upon personal

knowledge and, if called to testify, could and would testify competently to the facts

set forth herein.

GUDGEON DECLARATION IN SUPPORT
OF PETITION TO COMPEL ARBITRATION
– Page 1

SW WILSDON LAW
P.O. Box 5515
Carmel, California 93921
831.324.0627

2.      My responsibilities at Getty Images include executing the strategy and development plans for Getty Images' Content Partnership program, across editorial, creative/commercial, stills and video

3.      I am familiar with the computerized system used by Getty Images to record and store contract documents, correspondence and other communications by and between Getty Images and its partners.

4.      Attached as Exhibit A is a true and correct copy of the Image Partner Rights Managed Distribution Agreement between Getty Images (US), Inc. and Car Culture, Inc., dated September 15, 2006, and signed by Lucinda Lewis as President of Car Culture, Inc.

5.      The percentage of the royalty paid to Ms. Lewis and Car Culture, Inc. has been redacted in Section 8.3 in Exhibit A because that information is treated as proprietary and confidential business information by Getty Images (US), Inc.

6.      Attached as Exhibit B is a true and correct copy of a letter from Getty Images (US), Inc. to Ms. Lewis and Car Culture, Inc., dated November 7, 2019, advising those parties that Getty Images (US), Inc. was terminating the Image Partner Rights Managed Distribution Agreement.


I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct.

Executed:  June 22, 2022.


_____
Helen Gudgeon

GUDGEON DECLARATION IN SUPPORT
OF PETITION TO COMPEL ARBITRATION
– Page 2

WILSDON LAW
P.O. Box 5515
Carmel, California 93921
831.324.0627

# EXHIBIT A

# IMAGE PARTNER
# Rights Managed Distribution Agreement

This Image Partner Distribution Agreement ("Agreement") is made as of September 15, 2006 ("Effective Date") between Getty Images (US), Inc., having an office at One Hudson Square, 75 Varick Street, New York, NY 10013 USA ("Getty Images") and Car Culture, Inc., having an office at 14431 Ventura Blvd., Suite 411, Sherman Oaks, CA 91423 USA ("Partner").

Whereas, Getty Images owns and operates a global distribution system for the sale and license of photographs and graphic design resources to creative professionals;

Whereas, Partner is in the business of imagery and would like the opportunity to have its Products distributed by Getty Images; and

Whereas, Getty Images and Partner would like to develop a close collaborative arrangement that will provide benefits to both parties and enhance distribution of the Products.

Now therefore, in consideration of the mutual undertakings hereafter set forth the parties hereby agree as follows:

## SECTION 1.   DEFINITIONS

1.1     "Confidential Information" means information designated as confidential or proprietary by the disclosing party, or known by the receiving party to be confidential.  Confidential Information includes all information covered or referenced by Section 11.

1.2     "Products" means Partner's rights managed images, materials, goods, and products, together with all packaging materials and documentation included with such Products submitted by Partner and accepted by Getty Images for distribution under this Agreement.

1.3     "Term" has the meaning set forth in Section 5.1.

1.4     "Territory" means the following geographical area: The World.

1.5     "Third Party" means any person or entity not a party to this Agreement and not an affiliate of a party to this Agreement.

## SECTION 2.   RELATIONSHIP AND DUTIES OF THE PARTIES

2.1     Appointment and Grant of Rights.  Subject to the terms and conditions of this Agreement, Partner grants to Getty Images, an exclusive license to distribute Partner's Products in the Territory.  Partner grants to Getty Images all rights, licenses and permissions to act as a distributor and marketer of Partner's Products to Getty Images' customers through its wholly-owned offices, through its network of delegates and distributors and through their catalogues and promotional materials, as well as their online distribution mechanisms as described and implied in this Agreement.  Getty Images will not alter or edit the Partner's Products except as appropriate to be technically and editorially compatible with Getty Images' offerings and services.

2.2     Independent Contractor.  The parties to this Agreement are independent contractors to one another.  This Agreement will not be interpreted or construed as creating or evidencing any association,

agency, joint venture or partnership between the parties or as imposing any partnership obligation or responsibilities on either party.

2.3     Exclusivity.  To ensure proper and efficient rights management for Partner's Products, Partner will not supply any of Partner's Products provided to Getty Images under the terms of this Agreement, or any Similars (as defined below) to any Third Party for license, sale or distribution, except solely for Partner's promotional purposes in connection with the promotion of Partner's website(s).  Nothing in this Section 2 shall be construed to prevent Partner from marketing and selling or licensing Partner's Products directly to an end user customer, with Partner retaining all proceeds from such sales, provided that the Partner communicates to Getty Images, any exclusive license restrictions granted.

2.4     Similars.  "Similar" means any image whose principal elements are depicted in a way that, when compared side by side with another image, would cause an industry professional to believe they are substantially the same.  Images shall not be considered Similars based only on their subject matter.  Getty Images may grant its customers exclusive rights to some of its rights managed products.  As such, Partner has or will include provisions in its contracts with photographers to obtain exclusive rights to the Products submitted to Getty Images (including any Similars) and will prohibit the submission to Partner of images that are Similars to those submitted to Getty Images or any other Third Party.  Upon request by Getty Images, Partner will provide all available information pertaining to the Products that may be necessary for Getty Images to identify any Similars contained within the Products.  If Partner or Getty Images becomes aware that any of the Products are Similar to any other images being licensed or sold by Getty Images, Partner will take all steps necessary to facilitate the removal of such Products from Getty Images' website.

2.5     Product Composition.  Getty Images shall have the right to review Partner's range of imagery available for inclusion in Partner's Products and to specify the general types of content, as well as specific images that are to be submitted by Partner for inclusion in the Products.  Partner shall deliver to Getty Images Products that focus on automobiles.

2.6     Product Acceptance.  In the calendar year 2006, Getty Images will accept 2,500 images from Partner.  Nothing contained herein shall prevent Getty Images from accepting additional Products, nor shall it obligate Getty Images to accept any additional Products above the number specified above.  All such numbers are dependant upon Partner submitting Products that meet Getty Images' quality standards and other control procedures as well as all other requirements contained within the Agreement.  Nothing contained herein shall be construed to guarantee the acceptance by Getty Images of any particular image or Product and all submissions must meet Getty Images' general acceptance criteria in order to be accepted by Getty Images.  "

## SECTION 3.   MARKETING/PROMOTION

Getty Images will use reasonable efforts to diligently market Partner's Products as part of its product offering.  No marketing or promotional opportunities are given to Partner as consideration for this Agreement aside from those expressly referenced within this Agreement or as otherwise expressly provided to Partner pursuant to this Agreement.

## SECTION 4.   LIMITATIONS

4.1     Limitations of Getty Images' Rights.  Partner reserves all rights not expressly granted to Getty Images under this Agreement.  Without limiting the foregoing, Getty Images will not, except as described in this Agreement, (a) market, distribute, transfer or otherwise commercially exploit the Products, (b)

2

copy or repackage the Products, or (c) disassemble or reverse engineer the Products or otherwise attempt to discover any trade secrets related to the Products.

4.2     Limitations on Getty Images' Duties.  Getty Images shall have the right to approve all Products chosen by Partner for Getty Images' promotion or distribution.  Getty Images reserves all necessary rights to refuse to promote or distribute Partner Products that do not meet Getty Images' technical requirements, content needs (as determined solely by Getty Images) or that Getty Images deems outdated, inaccurate, obscene, defamatory or libelous, objectionable, or where there are questions regarding the intellectual property rights regarding the Product.  Getty Images shall not be liable for any failure to promote or distribute Partner's Products.

## SECTION 5.   TERM AND TERMINATION OF AGREEMENT

5.1     Term.  The term of this Agreement (the "Term") shall commence as of the Effective Date, and terminate three (3) years from the Effective Date.  This Agreement shall renew automatically for one-year terms unless terminated under the conditions of either Sections 5.2 or 5.3.

5.2     Optional Termination of Agreement.  Either party may terminate this Agreement with or without cause after giving the other party ninety (90) days' advance written notice of termination.

5.3     Termination for Cause.  Either party may terminate immediately by giving the other party written notice of termination, if the other party fails to cure any breach of or default under this Agreement within (30) days after it receives written notice of such breach or default, or should either party become insolvent either may terminate immediately.

5.4     Effect of Termination.  Upon any expiration or termination of the Term, the appointment and license under Section 2 will terminate as soon as Getty Images removes all Products and Partner's trademarks from all sales mechanisms, which in no event shall be later than ninety (90) days following the effective date of termination of this Agreement.  Getty Images shall continue to pay royalties on any Images licensed or sold during this 90 day period.  Thereafter, Getty Images shall return to Partner or destroy, at Partner's discretion and cost, any and all physical media containing images that were provided to Getty Images.  Partner will refund to Getty Images all amounts paid by Getty Images for Images that have been paid in full (or in part) by Getty Images and subsequently returned by the licensee for a refund or credit.  The termination of this Agreement by expiration of the term or otherwise shall not affect the obligations of Getty Images to pay any royalties due to Partner from sales of Images.

5.5     Survival.  Sections 1, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13 and all other provisions that may reasonably be construed as surviving the termination or expiration of the Term will survive the termination of this Agreement and the expiration of the Term.

## SECTION 6.   PRESS RELEASES / PUBLICITY

Neither party may issue any press release or make announcements of any kind regarding the nature or extent of the parties' relationship without the express written consent of the other party with regard to both the timing and content of the announcement, which should not be unreasonably withheld.

## SECTION 7.   REPORTING AND DATA

7.1     Reports.  Within forty-five (45) days after the end of each month during and after (for any Product sales made by Getty Images after termination) the Term of this Agreement, Getty Images will provide Partner with sales information for the Products.  The reported information will include invoice

number, date of sale, an image/asset number, description of the image, industry, usage, territory, duration, gross license fee, gross royalty due.

7.2     Audit Rights. Partner may provide Getty Images with reasonable notice of its request to have a neutral Third Party or accounting firm audit records pertinent to Partner Product transactions through Getty Images. Getty Images will use reasonable efforts to accommodate such an audit, to be conducted at the sole expense of the Partner, within 30 days of the Partner's request. Getty Images shall bear the reasonable cost of such inspection and audit if an underpayment discrepancy of 10% or greater is found. Partner's audit right shall be during the Term and the one-year period following the expiration or termination of this Agreement and may only be exercised once during any twelve (12) month period.

7.3     Data. Getty Images retains sole ownership over the data collected from its sales or distribution of Partner's Products. Getty Images reserves all rights afforded it regarding such data, as granted by the terms and conditions governing the transactions.

## SECTION 8.  ORDERS, PRICING, PAYMENT

8.1     End User Orders. Getty Images or its fulfillment partners will use commercially reasonable efforts to fulfill customer orders for Partner's Products from Getty Images' web-sites, catalogues (if applicable), and other normal sales mechanisms. Getty Images will collect and keep all shipping charges borne by the end user customers.

8.2     Pricing for Customers.

   8.2.1   Price. Getty Images shall be solely responsible for setting the price and any applicable discounts for the Partner's Products licensed or sold pursuant to this Agreement.

   8.2.2   Outbound Selling Price. The Outbound Selling Price is defined as the amount invoiced to the end user for a licensed Product, excluding any returned or rebated Products and not including shipping costs, taxes, or similar fees collected from the end user of the Products.

8.3     Royalty Rate. Getty Images will pay to Partner a royalty of ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ of the Outbound Selling Price for each Product licensed or sold by Getty Images or one of its wholly-owned offices. Getty Images will pay to Partner a royalty of ▮▮▮▮▮▮▮▮▮▮ of the Outbound Selling Price for each Product licensed or sold through Getty Images' delegate network.

8.4     Payment to Partner. Getty Images will pay royalties on a monthly basis and will pay all royalties due within forty-five (45) days after the last day of each month for that month except when sales reporting from a member of Getty Images' delegate network is delayed, in which case such payments will be made in the month following the date such sale is reported. Payment will be made in US dollars and will be subject to any applicable withholding taxes. Such amount shall be adjusted for any returns received since the prior period.

8.5     Taxes. Getty Images will collect any and all sales, use, excise, import or export, value-added or other taxes or duties borne by the end user of the Products, and shall pay the same to the appropriate authorities.

## SECTION 9.  WARRANTIES

9.1     Mutual Warranties. Each party warrants and represents to the other party that it has full corporate power, authority, and resources to enter into this Agreement and carry out its obligations hereunder.

9.2     Partner Warranties. Except as specifically set forth in 9.6 below, Partner has and shall have during the term of this Agreement, sufficient rights in Partner's Products to grant Getty Images the rights set forth in this Agreement, including any necessary approval, consent, authorization, release, clearance or license of Partner or any other Third Party and any release related to any rights of privacy or publicity, as may be necessary for Partner to enter into this Agreement.  The Products provided by Partner to Getty Images under this Agreement, do not and will not: (i) infringe on or violate any Third Party copyright, patent, trademark, trade secret, privacy right, publicity right or other intellectual property or proprietary right of a Third Party; (ii) violate any law, statute, ordinance, or regulation; (iii) be defamatory or trade libelous; (iv) be pornographic or obscene; or (v) contain viruses, Trojan Horses, worms, time-bombs, or other similar harmful or deleterious programming routines; and Getty Images' exercise of its rights hereunder will not infringe on or violate any copyright, patent, trademark, trade secret, privacy right, publicity right or other intellectual property or proprietary right of any Third Party.  Partner warrants that none of the Products may be sold or licensed independently by the photographers who originally captured the images and that Partner's contracts with its contributing photographers prohibit the sale or license of such photographs that are included within Partner's Products.

9.3     Getty Images' Warranties. Getty Images will not knowingly use the Partner's Products in any manner which is or may be defamatory, derogatory or disparaging to Partner or any Partner employee, photographer, representative or affiliate; and Getty Images will include all appropriate trademark and copyright notices provided by Partner on all Partner Products.

9.4     Disclaimer. EXCEPT AS OTHERWISE EXPRESSLY SET FORTH IN THIS AGREEMENT, NEITHER PARTY MAKES ANY OTHER REPRESENTATIONS OR WARRANTIES, WHETHER EXPRESS OR IMPLIED, INCLUDING WITHOUT LIMITATION, ANY IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, TITLE OR NON-INFRINGEMENT.

9.5     Loss of Goods. Getty Images assumes all title and risk of loss for Products (including the physical media on which the Products are stored) once title and/or custody for any such Products passes to Getty Images.

9.6     Unreleased Imagery. Getty Images acknowledges and agrees that certain Products supplied by Partner will contain properties that will require additional clearances, and that releases will not be provided by Partner for such properties depicted in the Products.  Getty Images will supply to Partner guidelines of descriptions of properties ("Property Guidelines") it will accept without releases and category codes for Partner to apply to each Product hereunder.  Partner will cooperate in good faith with Getty Images in connection with such assignments of category codes, provided that Getty Images shall make the final decision as to the category code assigned to each Product. Without limiting the generality of the foregoing, Partner shall advise Getty Images if Partner believes that an automobile depicted in a Product is no longer in production, and the year in which Partner believes such production ceased.  Getty Images represents and warrants that it will accept Products that adhere to the Property Guidelines provided to Partner and that are properly categorized, and that Getty Images will assume liability for any third party claims made regarding the property or properties depicted in the Products and Partner will not be required to make any indemnification in connection therewith.

**SECTION 10.  INDEMNIFICATION**

10.1     Indemnification by Partner. Except as specifically set forth in 9.6 above, Partner will defend, indemnify and hold harmless Getty Images, for any damages, loss, cost, and expense (including, without

limitation, reasonable attorneys' fees and expenses) incurred by Getty Images arising from or in connection with any actual or alleged (a) Claim, demands, liabilities, suits, proceedings or actions ("Claim") for breach of any obligation, representation or warranty made by Partner in this Agreement or in any certificate, instrument, or document delivered by Partner pursuant to this Agreement, (b) Claim that the Products or Getty Images' sale or distribution of Products infringes, misappropriates or violates any copyright, trademark, trade secret, privacy, publicity or other intellectual property or proprietary right of any party, or (c) Claim by any person for brokerage or finder's fee or commissions or similar payments based upon any agreement or understanding alleged to have been made by such person with Partner (or any person acting on its behalf) in connection with any of the transactions contemplated by this Agreement.

10.2    Indemnification by Getty Images. Getty Images will indemnify and hold harmless Partner, for any damages, loss, cost, and expense (including, without limitation, reasonable attorneys' fees and expenses) incurred by Partner arising from or in connection with any actual or alleged Claim for breach of any obligation, representation or warranty made by Getty Images in this Agreement or in any certificate, instrument, or document delivered by Getty Images pursuant to this Agreement.

10.3    Cooperation by Indemnified Party. The indemnifying party is under no obligation to indemnify under Section 10.1 or Section 10.2 and hold the other party harmless unless:

> 10.3.1  the indemnifying party is promptly notified of the Claim by the indemnified party and furnished by the indemnified party with a copy of each communication, notice or other action relating to said Claim, provided, however, that a party's failure to promptly notify the indemnifying party of a Claim shall only excuse indemnifying party from its indemnification obligations solely to the extent that such delay prejudices indemnifying party's ability to defend a Claim;

> 10.3.2  the indemnifying party has the right to assume sole control to conduct the trial or settlement of such Claim or any negotiations related thereto at the party's own expense (provided that any settlement must be approved by both parties); and

> 10.3.3  the indemnified party provides reasonable information and assistance requested by the indemnifying party in connection with such Claim.

10.4    Insurance and Royalty Reductions. Without limitation of the indemnification hereunder, Partner shall provide Getty Images with a certificate of insurance evidencing (i) multi-media errors and omissions insurance with limits of no less than $1,000,000 per occurrence and $2,000,000 in the aggregate and (ii) comprehensive general liability insurance written on an occurrence basis, affording protection of not less than $2,000,000 combined single limit, for bodily injury and/or property damage and personal injury. Such insurance policies shall include Getty Images as additional named insured. Getty Images shall be entitled to deduct up to fifty (50%) from the royalties payable to Partner under this Agreement and apply such deductions to any amounts that may be owed by Partner (either directly or through any insurance policy) to Getty Images under this Agreement. Such deductions may be made regardless of whether the amounts owed are the result of a breach of this Agreement, or for a liability to a Third Party that Getty Images has paid on behalf of or as a result of the Partner. In the event any such deduction is made, Getty Images will notify Partner of such deduction in the sales report for the month in which such deduction is made. In the event Getty Images receives payment for any liability for which it has deducted amounts from the royalties payable to Partner, Getty Images shall credit Partner's account with the amount of any such payments and make any payments to Partner that may result from such credit.

## SECTION 11.  CONFIDENTIALITY

11.1    Confidentiality Obligation.  During the term of this Agreement and for as long after its expiration or termination as either party possesses any Confidential Information, each party agrees to not disclose any Confidential Information of the other party to any Third Party or use any of the Confidential Information except as necessary to perform that party's obligations under this Agreement.

11.2    Exceptions to Confidentiality Obligation.  A party will not be in breach of Subsection 11.1 if the Confidential Information in question:

>    11.2.1  can be shown to have been known by that party before it was disclosed to that party by or on behalf of the other party, and not to have been acquired by that party improperly or from any Third Party who was or is subject to a confidentiality obligation;

>    11.2.2  is or comes into the public domain (unless it does so because of that party's breach of Subsection 11.1);

>    11.2.3  is required to be disclosed by any law or any competent legal authority provided, however, the party required to disclose the Confidential Information by any law or any competent legal authority agrees to immediately notify the disclosing party of the existence, terms and circumstances surrounding such a request, so that it may seek an appropriate protective order and/or waive the receiving party's compliance with the provisions of this Agreement;

>    11.2.4  is only disclosed to that party's professional advisers under an obligation of confidentiality for the purpose of obtaining professional advice in connection with this Agreement, and in addition, in the case of Getty Images, disclosed to any Getty Images office; or

>    11.2.5  is disclosed only after obtaining the written consent of the other party.

## SECTION 12.  INTELLECTUAL PROPERTY

12.1    Reservation of Rights.  The Products involve valuable copyright, trade secret and other proprietary rights of Partner.  Except as described in this Agreement, no title to ownership of any Products, or the copyright, trademark, trade secret or other proprietary rights to any Products, are transferred to Getty Images.  Except as granted herein, Partner reserves all copyright, trade secret, and other proprietary rights in the Products.  Getty Images will use commercially reasonable measures to avoid removing, altering, or obscuring any trademark, copyright or other propriety right notice or legend appearing in or on the Products.

12.2    Trademarks.  Partner reserves all of its trademarks used in association with the Products, but hereby grants to Getty Images the non-exclusive right to use such trademarks during the Term to identify the Products in connection with Getty Images' marketing and distribution of the Products in the Territory. Getty Images does not grant any rights or licenses in Getty Images' pending or registered trademarks to Partner.

## SECTION 13.  LIMITATION OF LIABILITY

NOTWITHSTANDING ANYTHING TO THE CONTRARY CONTAINED HEREIN, EXCEPT FOR LIABILITY TO THIRD PARTIES ARISING UNDER SECTION 10 HEREOF OR ARISING FROM A BREACH OF SECTION 11, NEITHER PARTY SHALL, UNDER ANY CIRCUMSTANCES, BE

LIABLE TO THE OTHER PARTY FOR INDIRECT, CONSEQUENTIAL, INCIDENTAL, PUNITIVE, OR SPECIAL DAMAGES, INCLUDING BUT NOT LIMITED TO LOST PROFITS, EVEN IF SUCH PARTY HAS BEEN APPRISED OF THE LIKELIHOOD OF SUCH DAMAGES OCCURRING.

## SECTION 14. OTHER

14.1     Compliance with Applicable Laws.  In performing this Agreement, each party will comply with all applicable laws, regulations and other requirements, now or hereafter in effect, of Governmental authorities having jurisdiction, including, but not limited to, the US Export Administration Act, regulations of the US Department of Commerce and other export controls of the US, as they may be amended.  Neither party will take any actions that may cause the other party to be in violation of any law.

14.2     Controlling Law.  This Agreement shall be interpreted, construed and governed by the laws of the State of Washington, U.S.A.  Any dispute, controversy or claim between the parties arising out of or related to this Agreement, or the breach, termination or invalidity hereof shall be settled by binding arbitration to be held in Seattle, WA, U.S.A., pursuant to the then current rules of the American Arbitration Association ("AAA").  The parties agree that one arbitrator shall be selected for the proceeding, utilizing the AAA's normal rules and procedures for arbitrator selection.

14.3     Severability.  In the event that any provision of this Agreement shall be unenforceable or invalid under any applicable law, or so held by applicable court decision, such enforceability or invalidity shall not render this Agreement unenforceable or invalid as a whole, and in such event such provision shall be changed and interpreted so as to best accomplish the objectives of such provision.

14.4     Assignment.  Except to an entity that is a parent, subsidiary or affiliate, or as otherwise specifically stated herein, Partner may not assign any of its rights under this Agreement, including through a change of control for Partner, without the prior written consent of Getty Images, which shall not be unreasonably withheld.  Any assignment by Partner to an acquiring entity shall require the prior written consent of Getty Images.  Notwithstanding the foregoing, Getty Images may assign its rights under this Agreement to a parent, subsidiary, distributor, affiliate or member of its delegate network to the extent necessary to carry out and fulfill Getty Images' rights under this Agreement.  Subject to the foregoing, this Agreement will be fully binding upon, inure to the benefit of, and be enforceable by the parties and their respective successors and assigns.

14.5     Notice.  Any notice or other communication under this Agreement given by either party to the other will be in writing and delivered either (a) in person or by first-class, registered or certified mail or an internationally recognized courier service, return receipt requested, postage prepaid or (b) by facsimile. Notices will be directed to the intended recipient at the address specified below:

To Getty Images:  Getty Images, 601 North 34th Street, Seattle, WA 98103 USA  Attn:  Legal Counsel

To Partner:  Car Culture, Inc., 14431 Ventura Blvd., Suite 411, Sherman Oaks, CA 91423  USA

14.6     Waiver.  No express or implied waiver by either party of any provision of this Agreement or of any breach or default of the other party shall constitute a continuing waiver, and no waiver by either party shall prevent such party from enforcing any and all other provisions of this Agreement or from acting upon the same or any subsequent breach or default of the other party.

14.7     Entire Agreement.  This Agreement sets forth the entire Agreement between the parties, and supersedes any and all prior agreements between them, relating to the Products.  No amendment or

8

modification of any provisions of this Agreement will be valid unless set forth in a written instrument signed by both parties.

14.8    Counterparts; Fax Signatures.  This Agreement may be executed in one or more counterparts which, taken together, shall constitute one and the same instrument, and this Agreement shall become effective when one or more counterparts have been signed by each of the parties.  Signatures may be exchanged by facsimile transmission and each party to this Agreement agrees that it will be bound by its own facsimile signature and that it accepts the facsimile signature of the other party to this Agreement.

In witness whereof, the parties have executed this Agreement to be effective as of the Effective Date.

**Getty Images (US), Inc.**

Name: _J Beyle_

Print: _Jeff Beyle_

Title: _SVP & General Counsel_

Date: _9.15.06_

**Car Culture, Inc.**

Name: _Lucinda Lewis_

Print: _Lucinda Lewis_

Title: _President_

Date: _9-15-06_

**EXHIBIT B**

7 November 2019


Cindy Lewis
Car Culture, Inc.
14431 Ventura Blvd
Suite 411
Sherman Oaks
CA 9423
USA


Dear Cindy,

**Image Partner Rights Managed Distribution Agreement between Car Culture, Inc. and Getty Images (US), Inc, dated 15 September 2006 (the "Agreement")**

We write in connection with the Agreement.  Pursuant to section 5.2 of the Agreement, either party may terminate this Agreement by giving the other party not less than ninety (90) days' notice of termination.  The purpose of this letter is to serve as Getty Images' written notice to terminate the Agreement pursuant to that section.

Accordingly, the Agreement shall end with effect from 6 February 2020, subject to the "effect of termination" provisions described in Section 5.4 of the Agreement.

Yours sincerely


Helen Gudgeon
Director, Content Partners
Getty Images