UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

GETTY IMAGES, INC., and GETTY IMAGES (US), INC.,

Petitioners,

v.

CAR CULTURE, INC., and AUTOMOBILIA II, LLC,

Respondents.

CASE NO. C22-886 MJP

ORDER DENYING PETITION TO COMPEL ARBITRATION

This matter comes before the Court on the Petition to Compel Arbitration filed by Getty Images, Inc. and Getty Images (US), Inc. (Dkt. No. 1.) Having reviewed the Petition, Respondents' Opposition (Dkt. No. 20), the Reply (Dkt. No. 23), and all supporting materials, the Court DENIES the Petition.

**BACKGROUND**

Petitioners Getty Images, Inc. and Getty Images (US), Inc. (together "Getty") filed a petition to compel arbitration against respondents Car Culture, Inc. and Automobilia II, LLC.

Getty seeks to compel arbitration over claims Automobilia II, LLC has asserted against Getty Images, Inc., Getty Images (US), Inc., and Pixels.com, LLC in the Central District of California. The Court reviews the parties at issue, the underlying lawsuit, and the business arrangement between Petitioners and Respondents that includes the relevant arbitration provision.

**A. The Parties**

Lucinda Lewis is a photographer who "captures a nostalgic look of America through classic automobiles while posed with neon-lit diners, drive-in movie theaters, and Route 66 landmarks among many others." (See Automobilia II, LLC v. Getty Images, Inc. et al., 2:22-cv-2560, First Amended Complaint (FAC) ¶¶ 8 (Dkt. No. 1 at 24-34).) Lewis owns two different companies that appear to help her distribute and sell her car-themed photographs: (1) Automobilia II, LLC ("Automobilia"), and (2) Car Culture, Inc. ("Car Culture"). (See Declaration of Lucinda Lewis ¶ 1 (Dkt. No. 22).) Lewis has described Automobilia as being in the business of "providing on-line automobile photographs," (Dkt. No. 5 at 22), and Car Culture as being a "Photo Library" (Dkt. No. 5 at 10). According to the underlying lawsuit Automobilia filed against Getty, Lewis transfers images she takes to Automobilia. (See FAC ¶¶ 8, 10.) Automobilia or its predecessor in interest then registers the photos with the United States Copyright Office. (Id. ¶ 10.) In opposing the Petition, Lewis states further that Car Culture is "an exclusive licensee of Automobilia's copyrights" as to certain photographs, though she does not specify whether this statement applies to the photographs involved in the underlying lawsuit. (Lewis Decl. ¶ 4 (Dkt. No. 22).)

Getty Images, Inc. is a visual media company that acquires photographs, videos, and music recordings that it then licenses to the paying public. (FAC ¶ 12.) In 2006, Car Culture and Getty Images (US), Inc. (a subsidiary of Getty Images, Inc.) entered into an Agreement through

which Car Culture gave Getty Images (US), Inc. an exclusive license to distribute certain "managed images, materials, goods, and products." (Agreement ¶¶ 1.2, 2.1 (Ex. A to the Declaration of Helen Gudgeon (Dkt. No. 2)).) The Agreement applies only to images "submitted by [Car Culture] and accepted by Getty Images for distribution." (Id. ¶ 1.2.) This relationship endured until early 2020, when Getty terminated the Agreement after a dispute arose over Getty's distribution of Lewis' works in merchandise form. (See Ex. B to the Gudgeon Decl.; Ex. A to the Declaration of Isabel Nicholson (Dkt. No. 3).)

**B. Automobilia's Lawsuit**

Automobilia filed suit against Getty et al. in the Central District of California alleging copyright infringement. Automobilia alleges that Getty offered merchandise for sale using certain images to which Automobilia owns the rights without obtaining permission in violation of the Copyright Act. (See FAC ¶¶ 14-22.) Automobilia alleges it owns "all rights, title, and interests" to the photos at issue in the underlying lawsuit. (Id. ¶ 11.) The infringement allegedly took place between at least April 23, 2019 and May 3, 2020. (FAC Exs. B & C.) Automobilia pursues two claims of copyright infringement under 17 U.S.C. § 501. (FAC ¶¶ 23-46.)

Automobilia's lawsuit omits any allegation as to how Getty came into possession of the images. In exhibits to the complaint, there are screen shots taken from Getty's websites that show "Car Culture" as the artist. But there are no allegations that Car Culture originally provided the images to Getty. The complaint does contain passing reference to Car Culture's relationship to Getty: "In addition, Automobilia II's licensee once had a relationship with Getty US, and, as such, Defendants were fully aware of Automobilia II's copyrights and copyrights registrations through that relationship." (FAC ¶¶ 27, 39.) But there is no explicit statement that Getty obtained

these images from the licensee—Car Culture. And Getty has not provided evidence with its Petition as to how it obtained the images at issue in the underlying lawsuit.

**C. Petition to Compel Arbitration**

Getty seeks an order compelling Automobilia and Car Culture to engage in binding arbitration on the theory that the Agreement between Car Culture and Getty applies to the photos at issue in the underlying lawsuit and that Car Culture's agreement to arbitrate any claims binds both it and Automobilia, even though Automobilia is a non-signatory. The Court reviews the relevant facts and arguments.

In its Petition, Getty invokes two specific provisions of the Agreement. First, Getty points out that Car Culture agreed to arbitrate "[a]ny dispute, controversy or claim between the parties arising out of or related to this Agreement. . . ." (Agreement ¶ 14.2.) Second, the Agreement contains an "Assignment" provision stating that Car Culture "may not assign its rights under this Agreement . . . without the prior written consent of Getty Images . . . [e]xcept to an entity that is a parent subsidiary or affiliate. . . ." (Id. ¶ 14.4.) Getty invokes this language to suggest that Automobilia was contemplated as an "affiliate" of Car Culture and that Automobilia is an intended third-party beneficiary.

In its Petition, Getty argues that Car Culture owns at least one of the images at issue in the underlying lawsuit and must therefore arbitrate Automobilia's claims. Getty also argues that even though Automobilia is not a signatory to the Agreement, it is bound to it by principles of contract and agency. Lastly, it argues that Automobilia should be equitably estopped from avoiding the arbitration agreement. In its reply, Getty seizes on a statement from Lewis's Declaration that Car Culture is an exclusive licensee of certain images from Automobilia. Getty

argues that if this is true, then only Car Culture has standing to sue and that it must therefore arbitrate the claims.

**ANALYSIS**

**A. Legal Standard Applicable to Petitions to Compel Arbitration**

The Federal Arbitration Act provides that agreements to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Supreme Court has "described this provision as reflecting both a liberal federal policy favoring arbitration." AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 339 (citation and quotation omitted). The Court places arbitration agreements on "equal footing with other contracts" and "enforce[s] them according to their terms." Id. And, in general, "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration[.]" Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp., 460 U.S. 1, 24–25 (1983).

But in instances where the question is whether "'a particular party is bound by the arbitration agreement . . . the liberal federal policy regarding the scope of arbitrable issues is inapposite.'" Rajagopalan v. NoteWorld, LLC, 718 F.3d 844, 847 (9th Cir. 2013) (quoting Comer v. Micor, Inc., 436 F.3d 1098, 1104 n.11 (9th Cir. 2006)). And "traditional principles of state law" determine whether a "contract [may] be enforced by or against nonparties to the contract through . . . third-party beneficiary theories . . . and estoppel." Arthur Andersen LLP v. Carlisle, 556 U.S. 624, 631 (2009) (citation and internal quotation marks omitted).

The party seeking to compel arbitration has the burden to demonstrate: "(1) the existence of a valid, written agreement to arbitrate; and, if it exists, (2) that the agreement to arbitrate encompasses the dispute at issue." Ashbey v. Archstone Property Mgmt., Inc., 785 F.3d 1320,

1325 (9th Cir. 2015). "'When considering a motion to compel arbitration, a court applies a standard similar to the summary judgment standard' of Federal Rule of Civil Procedure 56." Cross v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA, No. 2:19-CV-00787-KJM-DB, 2019 WL 6496838, at *4 (E.D. Cal. Dec. 3, 2019) (quoting Concat LP v. Unilever, PLC, 350 F. Supp. 2d 796, 804 (N.D. Cal. 2004) (internal quotation marks and citation omitted)); see also Cox v. Ocean View Hotel Corp., 533 F.3d 1114, 1119 (9th Cir. 2008) ("[D]enial of a motion to compel arbitration has the same effect as a grant of partial summary judgment denying arbitration. . . ."); Greystone Nevada, LLC v. Anthem Highlands Cmty. Ass'n, 549 F. App'x 621, 623 (9th Cir. 2013) (reversing an order compelling arbitration when opposing party had been afforded no opportunity to present evidence and argument).

**B. Validity of the Arbitration Provision**

Respondents do not challenge Getty's assertion that the Agreement contains a valid and enforceable arbitration provision. This is unsurprising, given that the FAA applies to any written agreement involving interstate commerce, and there is undisputed evidence that the Agreement here concerns interstate commerce between entities of different states. See Circuit City Stores v. Adams, 532 U.S. 105, 112-13 (2001). In addition, the arbitration provision is exceedingly broad and could encompass the claims at issue if Automobilia was bound by it.

Respondents argue that their statutory claims cannot be subject to the arbitration agreement because "[t]his dispute arises out of a freestanding obligation to avoid infringement and is not subject to the arbitration provision." (Opp. at 4 (Dkt. No. 20 at 9).) This argument lacks merit. If the arbitration provision applies, then the claims Automobilia asserts fall well within the scope of the provision. The cases Respondents rely on are distinguishable because the subject matter in those actions fell outside of the scope of the relevant arbitration provision. (See

id.) The same cannot be said here, where the claims fall well within the broad scope of the arbitration provision. This undermines Respondents' position and the Court rejects the argument.

**C. Car Culture as an "Exclusive Licensee"**

Getty argues in the Reply that because Respondents admit Car Culture is an exclusive licensee of Automobilia's works, only Car Culture has standing to pursue the underlying claims and it therefore must arbitrate the claims. This argument lacks merit on the record before the Court.

"Under the Copyright Act, only the 'legal or beneficial owner of an exclusive right under a copyright' has standing to sue for infringement of that right." Righthaven LLC v. Hoehn, 716 F.3d 1166, 1169 (9th Cir. 2013) (quoting 17 U.S.C. § 501(b)). So "if a copyright owner grants an exclusive license of particular rights, only the exclusive licensee and not the original owner can sue for infringement of those rights." Id. at 1170 (citing 3 M. Nimmer & D. Nimmer, Nimmer on Copyright § 12.02[C] (2012)).

Playing off of these principles, Getty argues that: (1) only Car Culture can bring the claims as the "exclusive licensee" of the images at issue in the underlying lawsuit; and (2) Car Culture must arbitrate the claims per the Agreement. But this argument does not track the record and cannot be squared with the allegations in the underlying complaint as to the ownership of the images.

First, contrary to Getty's argument in Reply, Lewis has not admitted that Car Culture is the exclusive licensee of the specific copyrighted photos at issue in the underlying lawsuit. Lewis states in full: "Car Culture is an exclusive licensee of Automobilia's copyrights as provided in the 'Image Partner Rights Managed Distribution Agreement.'" (Lewis Decl. ¶ 4.) As the Court understands this statement, Lewis claims only that images Car Culture gave to Getty through the

Agreement were ones over which Car Culture had an exclusive license. But Lewis does not state that the images at issue in the underlying lawsuit were provided to Getty pursuant to the Agreement. That is a critical omission because it leaves unanswered the question of whether Car Culture is the exclusive licensee of the images at issue in the underlying lawsuit. And Getty itself provides no evidence to answer it. There is no evidence submitted with the Petition as to how Getty obtained the images at issue in the underlying lawsuit. As such, the Court rejects Getty's overbroad interpretation of Lewis' statement.

Second, the allegations in the underlying complaint fail to show the images came from Car Culture to Getty. Getty cites to Automobilia's allegations that Getty should have been aware of Automobilia's copyrights given that Car Culture had a relationship with Getty. (FAC ¶¶ 27, 39.) But these oblique statements do not aver that Car Culture provided the images at issue to Getty. Nor can the Court merely accept Getty's gloss on the allegations, as it would improperly construe the facts in light most favorable to Getty, not Respondents.

Third, Getty argues that as to one image, there is conclusive evidence that only Car Culture is the owner. The Court disagrees. Getty's argument first requires the Court to take judicial notice of a copyright registration of an image at issue in the underlying lawsuit (VA0000647827). This is appropriate and the Court does so. See Warren v. Fox Fam. Worldwide, Inc., 171 F. Supp. 2d 1057, 1062 (C.D. Cal. 2001), aff'd, 328 F.3d 1136 (9th Cir. 2003). This shows that the image was registered in 1994 to Machine Age, Inc., which has since changed its name to Car Culture, Inc. But this registration does not explain who the current owner of the rights of the image is. As alleged in the underlying lawsuit, only Automobilia owns the rights. (FAC ¶ 11.) The Court has no contrary evidence before it. Accepting Getty's

argument would simply ignore the pleaded allegations in the underlying lawsuit, which would be improper particularly under the summary judgment standard that applies.

In sum, the Court remains unconvinced that there is evidence that the images at issue are those over which Car Culture has the exclusive license. Getty has therefore failed to support its argument, and the Court rejects it as a basis to compel arbitration.

**D. Automobilia Not Bound by the Agreement**

Getty makes three arguments in support of its theory that Automobilia is bound to the Agreement to arbitrate even though it is a non-signatory. First, it argues that Automobilia is bound by the plain language of the Agreement because it is an "affiliate" of Car Culture. Second, it argues that Automobilia is bound by agency principles. Third, it argues that Automobilia is bound by equitable estoppel because it has enjoyed the benefits of the Agreement while trying to evade its burdens. None of these arguments has merit.

**1. The Agreement does not apply to Automobilia**

Getty makes a strained argument that the Agreement expressly applies to Car Culture because it is an affiliate. This argument does not track the Agreement.

Getty suggests that Automobilia is a third-party beneficiary to the Agreement under Washington law—the applicable law. For a non-party to a contract to be bound as a third party beneficiary, "both contracting parties must intend that a third party beneficiary contract be created." Postlewait Const., Inc. v. Great Am. Ins. Cos., 106 Wn.2d 96, 99 (1986). "[T]he test of intent is an objective one; the key is not whether the contracting parties had an altruistic motive or desire to benefit the third party, but rather, whether performance under the contract would necessarily and directly benefit that party." Id. (citation and quotation omitted). And the "contracting parties' intent is determined by construing the terms of the contract as a whole, in

light of the circumstances under which it is made." Id. at 99-100. (citation and quotation omitted).

There is no evidence here that either party to the Agreement intended it to bind Automobilia even if the Court accepts that Automobilia is an affiliate of Car Culture. First, nothing in the Agreement suggests that Car Culture signed it as an affiliate of Automobilia or as a subsidiary of Automobilia. The Agreement names only Car Culture as the "Partner" to it, and it does not identify Car Culture as having signed the Agreement for the benefit of any other entity. Thus, Car Culture's performance under the Agreement appears limited to it and only it. Second, Getty misconstrues the Agreement's language about "Assignments" to suggest Automobilia is an intended third-party beneficiary. This provision only states that Car Culture could assign its rights to an affiliate without Getty's approval. (Agreement ¶ 14.4.) While this suggests the parties intended to allow for such assignments, there is no evidence that Car Culture actually assigned any rights to Automobilia. At most, the Court has evidence of just the opposite—that Automobilia assigned rights to Car Culture. The Court finds nothing in the Agreement to suggest that it was intended to bind Automobilia. The Court rejects Getty's argument that Automobilia is bound by the express language of the Agreement.

**2. Agency law does not support Getty's position**

Getty unconvincingly argues that Car Culture signed the Agreement as an agent of Automobilia.

"'[A]an agency relationship results from the manifestation of consent by one person that another shall act on his behalf and subject to his control, with a correlative manifestation of consent by the other party to act on his behalf and subject to his control.'" Afoa v. Port of

Seattle, 191 Wn.2d 110, 126 (2018) (quoting Moss v. Vadman, 77 Wn.2d 396, 402-03 (1969)). "The burden of establishing an agency relationship is on the party asserting it exists." Id.

Getty has failed to show any manifestation that Car Culture acted as an agent of Automobilia. The closest Getty comes is to suggest that Automobilia and Car Culture had a licensor-licensee relationship. But this relationship appears only to have allowed Car Culture to obtain exclusive license for all photos it then provided to Getty. This was consistent with Car Culture's warranty to Getty that it could provide a full license for images it supplied per the Agreement. (See Agreement ¶ 9.2.) But this does not show Car Culture acted as Automobilia's agent, particularly as to the specific images at issue. The Court has not been presented with the exclusive licensee arrangements and there is no evidence that there was an agency relationship. And the mere fact that Lewis owns both companies does not mean that Automobilia was an agent of Car Culture or vice versa. Getty has therefore failed to demonstrate any evidence of an agency relationship. The Court rejects this argument as a basis to compel arbitration.

**3. Equitable estoppel has no application**

Getty lastly argues that Automobilia should be equitably estopped from avoiding the arbitration agreement. This lacks any merit.

A party cannot be required to arbitrate a dispute he or she has not agreed to arbitrate. Satomi Owners Ass'n v. Satomi, LLC, 167 Wn.2d 781, 810 (2009). But "courts have recognized limited exceptions to this rule, including the principle of equitable estoppel." Townsend v. Quadrant Corp., 173 Wn.2d 451, 461 (2012). "Equitable estoppel precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes." Id. (citation and quotation omitted). Stated differently, "equitable estoppel may require a nonsignatory to arbitrate a claim if that person, despite never having signed the

agreement, knowingly exploits the contract in which the arbitration agreement is contained." Id. (citation and quotation omitted).

Getty has failed to show any evidence that Automobilia should be equitably estopped from seeking to enforce its rights to the images at issue in the underlying lawsuit. There is no evidence that these images were provided to Getty from Car Culture or that Automobilia received any royalties from Getty related to these specific images. As such, there is no evidence of a benefit that flowed to Automobilia. Without any evidence of some benefit that flowed to Automobilia, there is no basis to equitably estop it from vindicating its rights as to the images. The Court rejects this argument as a basis to compel arbitration.

## CONCLUSION

Getty has not satisfied its burden to compel arbitration over the claims Automobilia has asserted in the underlying lawsuit. None of the theories Getty advances shows that Automobilia, a non-signatory to the arbitration agreement, is bound by its terms. The Court finds that the arbitration provision does not apply. And the Court therefore DENIES the Petition.

The clerk is ordered to provide copies of this order to all counsel.

Dated November 14, 2022.

Marsha J. Pechman
United States Senior District Judge